UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROBERT PAUL MARSH,

        Plaintiff,

        v.                                 **DECISION AND ORDER**
                                                          18-CV-1302S
ANDREW M. SAUL,

        Defendant.
_____

1.      Plaintiff Robert Marsh brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his application for disability insurance benefits under Title II of the Act. (Docket No. 1.) The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

2.      Plaintiff protectively filed his application for benefits under Title II and Title XVI of the Act with the Social Security Administration on April 28, 2015. (R.[1] at 94.) Plaintiff alleged disability beginning on October 1, 2008, due to transverse myelitis, Crohn's disease, osteoarthritis, sciatica, ankylosing spondylitis, and psoriasis. (R. at 94-95.) Plaintiff's application for Title XVI benefits was approved, and he was found to be disabled as of his application date. His application for Title II benefits, however, was denied. Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ"). ALJ Melissa Lin Jones held a hearing on October 26, 2017, at which Plaintiff, represented by his attorney, appeared and testified. (R. at 31-90.) Vocational Expert Dawn Blythe also appeared and testified by telephone. At the time of the hearing, Plaintiff was 62 years old,

---
[1]Citations to the underlying administrative record are designated as "R."

with a twelfth-grade education and two years of college, and prior work experience as a "keyboard/info specialist." (R. at 101.)

3. The ALJ considered the case de novo and, on December 11, 2017, issued a written decision denying Plaintiff's application for benefits. (R. at 15-25.) On September 19, 2018, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1.) Plaintiff then filed the current action on November 19, 2018, challenging the Commissioner's final decision.[2]

4. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 9, 10.) Plaintiff filed a response on October 1, 2019, (Docket No. 11), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Plaintiff's motion is granted, and Defendant's motion is denied.

5. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the

---

[2] The ALJ's December 11, 2017, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

2

Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

8. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or

mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

9. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(a)(4); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity from his amended alleged disability onset date of September 1, 2007 through his date last insured of March 31, 2013. (R. at 18.) At step two, the ALJ found that Plaintiff

4

has the severe impairments of transverse myelitis and osteoarthritis. Id. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (R. at 19.)

11. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work during the relevant period, because Plaintiff was able to "lift and/or carry ten pounds occasionally and less than ten pounds frequently, stand and/or walk for two hours in an eight-hour workday with the use of a cane, and sit for six hours in an eight-hour workday." (R. at 20.) Although Plaintiff was "unable to climb ladders, ropes, or scaffolds, he was able to occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs." (Id.) In addition, Plaintiff was "unable to work at unprotected heights, around heavy moving mechanical parts, or in extreme cold." (Id.)

12. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work during the relevant period. (R. at 22.) At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (R. at 23.) Accordingly, the ALJ found that Plaintiff was not disabled at any time between the amended alleged disability onset date of September 1, 2007, through the date last insured, March 31, 2013. (R. at 37.)

13. Plaintiff argues that the ALJ's final determination is not supported by substantial evidence because (1) the ALJ did not base her RFC on any medical opinions, but rather on her own assessment of the "bare medical record," (2) the ALJ mistakenly identified a "deterioration" in Plaintiff's condition from 2013 to 2015, and (3) the ALJ failed

5

to include any limitations related to Plaintiff's Crohn's disease in her RFC determination. (Docket No. 9-1 at 17, 20, 21.) Each argument is discussed in turn.

14. Plaintiff first argues that the ALJ based her RFC finding on "bare medical evidence," and failed to develop the record by not requesting an examination or medical opinion from the doctors who treated Plaintiff during the relevant period. (Docket NO. 9-1 at 16.) Defendant argues that the ALJ possessed a complete medical history, and therefore was not obliged to seek a medical opinion in order to make an RFC determination. (Docket No. 10-1 at 10.)

15. The ALJ has the responsibility to determine a claimant's RFC, based on all of the relevant medical and other evidence in the record. See id. §§ 404.1527(d)(2), 404.1545(a), 404.1546(c); Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (the ultimate responsibility to determine a claimant's residual functional capacity rests solely with the ALJ).

16. An ALJ's decision can be supported by substantial evidence without any medical opinions, as long as the record contains "sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity," Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 33 (2d Cir. Apr. 2, 2013) (summary order). But "[d]ecisions in this district have consistently held that an ALJ's RFC determination without a medical opinion backing it is, in most instances, not an RFC supported by substantial evidence. Smith v. Saul, No. 17-CV-6641-CJS, 2019 WL 2521188, at *2 (W.D.N.Y. June 19, 2019) (citing Clifton v. Comm'r of Soc. Sec., No. 17-CV-946(T), 2019 U.S. Dist. LEXIS 88307, at *7 (W.D.N.Y. May 24, 2019); see also Pryn v. Berryhill, No. 16-CV-315-FPG, 2017 U.S. Dist. LEXIS 65830, 2017 WL 1546479, at *9 (W.D.N.Y. May 1, 2017) ("It is unclear to the Court how

the ALJ, who is not a medical professional, was able to make this determination without reliance on a medical opinion."); Dale v. Colvin, No. 15-CV-496-FPG, 2016 U.S. Dist. LEXIS 101193, 2016 WL 4098431, at *9 (W.D.N.Y. Aug. 2, 2016) ("There is no medical opinion regarding her capacity to sit, stand, walk, or lift, which are necessary activities for sedentary work. … Yet the ALJ, who is not a medical professional, somehow determined that Dale could perform sedentary work because a lumbosacral spine MRI showed "little abnormalities," a cervical MRI was "unremarkable," and "the treatment notes generally showed only a few objective findings.").

17. The medical records show that Plaintiff experienced an episode of transverse myelitis in 1989, which resulted in difficulty walking. (R. at 346.) This led to increasing difficulties with gait and spasticity over the years after the initial infection. (See id.). On August 16, 2012, Plaintiff saw Nurse Practitioner Laurie Brown-Croyts, who noted "hyperactive lower body reflexes and clonus to right ankle", along with spasms. (R. at 371-72.) His legs showed modest weakness, and he had an unsteady gait. (Id.) Two days before his insured period ended, on March 29, 2013, Ms. Brown-Croyts performed a physical exam. She observed "areas of loss of sensation on the lower legs bilaterally below the calf and on the top of the foot bilaterally, hyperactive lower leg reflexes with clonus," and that Plaintiff walked with a cane. (R. at 366.) The record for the relevant period shows problems with leg spasticity and, but contains no medical opinions relating these symptoms to Plaintiff's ability to function.

18. Plaintiff's record also contains evidence from after his date last insured. Evidence from after a covered period can be useful in determining the ongoing nature of an impairment, and can provide a retrospective diagnosis of a condition that was present

earlier. See Arnone v. Bowen, 882 F.2d 34, 39 (2d Cir. 1989). The ALJ appears to have considered subsequent evidence of impairments to be proof that Plaintiff deteriorated after March 31, 2013, not as evidence of an ongoing condition. One piece of evidence she cites for this proposition is simply incorrect: ALJ points to the fact that Plaintiff began using a cane in October 2013 as evidence that Plaintiff's condition declined after March 2013. (R. at 21.) However, the record actually shows Plaintiff using a cane to ambulate as of March 29, 2013, calling into question the ALJ's conclusion. (R. at 366.)

19. Medical evidence from after Plaintiff's date last insured may well be relevant to Plaintiff's functioning during the period; however, it, too, requires a medical opinion to understand its significance. For example, plaintiff underwent an MRI of his spine on December 19, 2013, as doctors sought an explanation for his ongoing leg problems. (R. at 414.) The report states that there was "no spinal cord abnormality," but there was "multilevel disc and bone degenerative change with narrowing of the central spinal canal." (R. at 414.) Defendant argues that "normal" MRI results support the proposition that Plaintiff was not disabled. (Docket No. 10-1 at 8.) But interpreting the relationship between an MRI result and Plaintiff's clearly-observed leg and gait deficits requires a medical opinion.

20. This case admittedly presents challenges, since the ALJ was required to assess whether Plaintiff was disabled during a period more than five years prior to the hearing date. However, this Court considers that a physician is better able than a lay person to assess Plaintiff's functioning at that time. Because it lacks any medical opinion addressing that issue, the ALJ's decision is not based on substantial evidence.

8

21. In addition to challenging the ALJ's RFC determination, Plaintiff also argues that the ALJ incorrectly stated that his condition deteriorated between 2013 and 2015 and that the ALJ should have included limitations based on his Crohn's disease in her RFC determination. This Court offers no opinion on these arguments at this time since the case is being remanded on other grounds. On remand, the ALJ is free to address these arguments to the extent she deems necessary.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 9) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 10) is DENIED.

FURTHER, that this case is remanded to the Commissioner of Social Security for further proceedings consistent with this decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:     March 2, 2020
             Buffalo, New York

                                                s/William M. Skretny
                                                WILLIAM M. SKRETNY
                                                United States District Judge